IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHELE FOTINOS, on behalf of
herself and as Guardian ad Litem
for her minor children, R.F. and
A.F.,

      Plaintiff,

   v.

JOHN FOTINOS; DAWN GROVER; RENEE
LA FARGE; BONNIE MILLER; KAMALA
HARRIS, Attorney General; JAYNE
KIM, Chief Trial Counsel, State
Bar of California; ROBYN PITTS,
City of Belmont Police Officer;
MARK REED, San Mateo County
Deputy Sheriff; PATRICK CAREY,
San Mateo County Deputy Sheriff;
SHANNON MORGAN; CITY OF BELMONT;
COUNTY OF SAN MATEO; and RENEE
LAFARGE,

      Defendant.

No. C 12-953 CW

ORDER GRANTING
DEFENDANTS'
MOTIONS TO DISMISS
AND DENYING
PLAINTIFF'S MOTION
FOR LEAVE TO AMEND

_____/

    Defendant John Fotinos, Defendant Dawn Grover, Defendant

Renee La Farge, Defendant Bonnie Miller, Defendant Kamala Harris,

Defendant Jayne Kim, Defendant City of Belmont, and Defendants

County of San Mateo, Mark Reed, Patrick Carey and Shannon Morgan

(San Mateo County Defendants) have filed motions to dismiss in

this case.  Defendant Miller also moves to strike the complaint

pursuant to California's anti-Strategic Lawsuit Against Public

Participation (anti-SLAPP) statute.  Plaintiff has filed

oppositions to Defendant Harris's motion, Defendant Miller's

motion, Defendant City of Belmont's motion, and the San Mateo

County Defendants' motions.  Plaintiff has not opposed Defendant J. Fotinos's motion, Defendant Grover's motion, Defendant La Farge's motion or Defendant Kim's motion.  Plaintiff has filed a motion for leave to amend or supplement the First Amended Complaint.  In that motion, Plaintiff's counsel "request[s] that rather than being required to file an opposition to Motions to Dismiss of Defendants Kim, La Farge, J. Fotinos, and Grover, I be allowed to amend/supplement to include the facts that I set out in this motion."  Defendants Kim, La Farge and Lee have filed oppositions to the motion for leave to amend.  The motions were decided on the papers.  Having considered the parties' papers, the Court GRANTS in part Defendant La Farge's motion to dismiss (Docket No. 18), GRANTS Defendant Harris's motion to dismiss (Docket No. 22), GRANTS Defendant Kim's Motion to dismiss (Docket No. 26), GRANTS in part Defendant J. Fotinos's motion to dismiss (Docket No. 33), GRANTS in part Defendant Grover's motion to dismiss (Docket No. 34), GRANTS in part Defendant Miller's motion to dismiss and DENIES her motion to strike (Docket No. 58), GRANTS Defendant City of Belmont's motion to dismiss (Docket No. 61), GRANTS the San Mateo County Defendants' motion to dismiss (Docket No. 62), and DENIES the motion for leave to amend or supplement (Docket No. 46).

BACKGROUND

This case arises out of a nine-year custody battle between Plaintiff Michele Fotinos and her ex-husband, Defendant John Fotinos.  In her complaint, Plaintiff accuses her ex-husband of physically and emotionally abusing their two children, R.F. and A.F. and alienating them from her.  After numerous setbacks in her

2

**United States District Court**
For the Northern District of California

efforts to gain custody of her children in state court, Plaintiff filed this lawsuit against numerous Defendants on behalf of herself and as guardian ad litem for R.F. and A.F.  Magistrate Judge James granted Plaintiff's ex parte application for appointment as guardian ad litem on March 22, 2012.  Docket No. 11.  The named Defendants are John Fotinos and his wife, Dawn Grover; Bonnie Miller, the children's former court-appointed counsel; the City of Belmont; Belmont police officer Robyn Pitts[1]; San Mateo County; San Mateo County deputy sheriffs Mark Reed and Patrick Carey; Renee La Farge, a former reunification therapist for Plaintiff and her children; Shannon Morgan, a San Mateo County social worker; Jayne Kim, Chief Trial Counsel for the California State Bar; and Kamala Harris, Attorney General of the state of

---

[1] Defendant Robyn Pitts has not been served.  It has been more than 120 days since this action commenced.  Accordingly, Plaintiff's claims against Pitts are dismissed.  See Fed. R. Civ. P. 4(m).

California.  Plaintiff alleges eleven causes of action, six of which are federal causes of action.[2]

DISCUSSION

I.   Plaintiff's Motion for Leave to Amend

Instead of opposing several of the motions to dismiss, Plaintiff has filed an "Ex Parte Motion for Leave to Amend/Supplement First Amended Complaint."  Plaintiff provides no basis for filing her motion ex parte in violation of Civil Local Rule 7-10 and she has not attached a copy of the proposed amended complaint in violation of Civil Local Rule 10-1.  Moreover, Plaintiff's motion does not provide any grounds for granting leave

United States District Court
For the Northern District of California

---

[2] Plaintiff also alleges five state law claims against Defendants J. Fotinos, Grover, Miller and La Farge.  Title 28 U.S.C. section 1367(c)(2) authorizes district courts to decline to exercise supplemental jurisdiction over a state law claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  In determining whether to decline to exercise supplemental jurisdiction, the Court should consider whether remanding the rest of the case to state court will accommodate the values of "economy, convenience, fairness, and comity."  Executive Software North America, Inc. v. United States District Court, 24 F.3d 1545, 1557 (9th Cir. 1994), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008).

At this time, the Court dismisses all of Plaintiff's federal claims.  Although some of Plaintiff's claims have been dismissed with leave to amend, there is a possibility that Plaintiff will not be able to pursue her federal claims.  If Plaintiff is unable to amend her complaint to pursue her federal claims, it will be more efficient for the state court to evaluate Plaintiff's state law claims and the values of economy, convenience, fairness, and comity will favor dismissing the state law claims without prejudice to refiling in state court.  Accordingly, the Court will not now decide Defendants' motions to dismiss to the extent that they seek dismissal of Plaintiff's state law claims.  If Plaintiff successfully amends her complaint to state one or more federal law claims against one or more of these Defendants, the Court will reconsider Defendants' motions to dismiss Plaintiff's state law claims.

to amend, and the facts and law to which the motion and attached declaration refer are not sufficient to overcome the deficiencies in her complaint identified in Defendants' motions to dismiss.

Plaintiff's motion for leave to amend/supplement is denied.

II.  Motion to Strike Complaint Pursuant to Anti-SLAPP Statute

Defendant Miller asserts that the complaint must be stricken under California Code of Civil Procedure § 425.16, California's anti-SLAPP statute.  However, the anti-SLAPP statute can only be applied to state law causes of action.  See Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010).  Because the Court dismisses all of Plaintiff's federal law claims, it does not reach Plaintiff's state law claims.  To the extent Defendant Miller seeks to strike Plaintiff's federal claims pursuant to the anti-SLAPP statute, her motion is denied.  To the extent Defendant Miller seeks to strike Plaintiff's state law claims, her motion is denied without prejudice to reconsideration if Plaintiff is able to successfully amend her complaint to state a federal law claim.

III. Lack of Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.

Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either
attack the sufficiency of the pleadings to establish federal
jurisdiction, or allege an actual lack of jurisdiction which
exists despite the formal sufficiency of the complaint.  Thornhill
Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th
Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.
1987).

> A.   Domestic Relations Exception

Defendants La Farge, J. Fotinos and Grover argue that this
Court should decline jurisdiction over Plaintiff's claims because
they are barred by the domestic relations exception.  However,
this case is distinguishable from the cases cited by Defendants.
In this case, Plaintiff alleges constitutional violations related
to the divorce and custody proceedings in state court.  Unlike
Peterson v. Babbitt, cited by Defendant La Farge, Plaintiff does
not allege that the state court's decision in this case violates
her constitutional rights.  708 F.2d 465 (9th Cir. 1983).  Rather,
her claims are based on the conduct of various parties who took
part in the state court proceedings.  Defendant La Farge's
contention--that the "core issue" in this case "is the issue of
visitation/custody and the parental status" of Plaintiff and
Defendant J. Fotinos--is not well taken.  La Farge Motion to
Dismiss at 8-9.  Accordingly, Defendants' motions are denied to
the extent they rely on the domestic relations exception.

> B.   Rooker-Feldman Doctrine

Defendants La Farge, J. Fotinos and Grover also argue that
Plaintiff's claims are barred by the Rooker-Feldman doctrine, see
Rooker v. Fidelity Trust Co., 263 U.S. 412 (1923); District of

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), because "Plaintiffs are seeking to revise one or more family court orders as to her custodial/visitation rights." La Farge Motion to Dismiss at 9. While Plaintiff expresses her disagreement with the results of the family court proceedings, she does not seek any modification of the state court orders, nor can her claims be characterized as "a forbidden de facto appeal of a state court judgment." Noel v. Hall, 341 F.3d 1146, 1165 (9th Cir. 2003). Accordingly Defendants' motions to dismiss are denied to the extent they rely on the Rooker-Feldman Doctrine.

C.   Quasi-Judicial Immunity

Defendants La Farge and Miller argue that they are entitled to quasi-judicial immunity because of their roles in the state court custody litigation. La Farge acted as the children's court-appointed attorney and Miller acted as the court-ordered reunification therapist for Plaintiff and her children. Plaintiff concedes that Miller is entitled to quasi-judicial immunity for all actions taken while appointed as the children's attorney.[3] However, Plaintiff's claims are based, at least in part, on her allegations that, after being discharged by the state court, both La Farge and Miller continued to act to influence the children's testimony in the ongoing proceedings. See, e.g., 1AC ¶¶ 46, 47, 191-205. Accordingly, to the extent that Plaintiff's claims are based on actions taken after La Farge and Miller were discharged by the state court, their motions to dismiss based on quasi-judicial immunity are denied.

_____

[3] As noted above, Plaintiff has not filed an opposition to Defendant La Farge's motion to dismiss.

United States District Court
For the Northern District of California

Nonetheless, Plaintiff's complaint also includes allegations regarding actions that La Farge and Miller made while appointed by the state court.  If Plaintiff files an amended complaint, she shall not rely on any alleged unlawful acts by La Farge or Miller during the times they were acting as court-appointed reunification therapist or court-appointed counsel respectively.

D.   Noerr-Pennington Doctrine

Defendant Miller also moves to dismiss the complaint against her based on the Noer-Pennington doctrine.  See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965). Defendant Miller asserts that, even though Plaintiff's claims are based on conduct alleged to have occurred after Defendant Miller was no longer engaged as the children's counsel, she "was conceivably using her training and expertise as an attorney to advise the children and obviously acting in her capacity as a lawyer to allegedly advise Defendant J. Fotinos."  Miller Reply at 8.  Accordingly, Miller asserts, Plaintiff has only alleged that Miller acted in a manner incidental to the underlying custody dispute and Miller's conduct should therefore be protected by the Noer-Pennington doctrine.  However, Miller has provided no authority to support her contention that an individual who is neither a party nor representing a party is protected by the Noer-Pennington doctrine.  The cases she cites are distinguishable. See, e.g., Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc., 944 F.2d 1525, 1528 (9th Cir. 1991) ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and

distinct activity which might form the basis for antitrust liability."); Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1185 (9th Cir. 2005) ("Discovery, like settlement talks, is 'conduct incidental to' a petition . . ."). Defendant Miller's motion to dismiss is denied to the extent it relies on the Noer-Pennington Doctrine.

IV.  Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the

United States District Court
For the Northern District of California

complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

A.   First Cause of Action--42 U.S.C. § 1985(2)

Plaintiff alleges that Defendants J. Fotinos, Grover, Miller, and La Farge conspired "for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in the custody proceeding in the California superior court" in violation of Title 42 U.S.C. § 1985(2).  Plaintiff alleges that these Defendants did so by coercing the children to testify falsely in the state court proceedings.

Plaintiff makes clear that she brings her claim pursuant to the second clause of § 1985(2), which provides that an injured party has a cause of action against any of the conspirators

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).  The Ninth Circuit has held, "A cognizable claim under this statute requires an allegation of a class-based,

invidiously discriminatory animus." <u>Phillips v. International</u>

<u>Ass'n of Bridge Workers, Local 118</u>, 556 F.2d 939, 941 (9th Cir.

1977).

Plaintiff has only made a bare allegation that the relevant Defendants acted with the intent to deny her and her children "equal protection of the law as victims of domestic abuse." 1AC ¶ 286. However, the Supreme Court has held,

> Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

<u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 272-73 (1993) (citations omitted). Plaintiff has made no allegations suggesting that any conspiracy, assuming that one existed, was motivated by animus against victims of domestic violence. Rather, the complaint alleges that the conspiracy operated to prevent Plaintiff from regaining custody of her children. <u>See, e.g.</u> 1AC ¶ 291 (actions taken "for the sole purpose of defeating M. Fotinos' OSC for change of custody"); ¶ 286 (actions taken "so that M. Fotinos would not regain custody of her children"); ¶ 288 (actions taken "to defeat their mother's claim for custody").[4]

---

[4] In her opposition to Defendant Miller's Motion to Dismiss, Plaintiff asserts that her claim is based on her and her children's status as victims of domestic violence, her and R.F.'s status as women, and her children's national origin. Docket No. 66 at 10. However, the 1AC similarly fails to allege that any of the conspirators acted because of her or her daughter's gender, or her children's national origin.

United States District Court
For the Northern District of California

1    Moreover, Plaintiff has failed to establish that victims of
2    domestic violence are a protected class.  For purposes of
3    § 1985(3) claims, the Ninth Circuit has extended the requirement
4    of class-based animus "beyond race only when the class in question
5    can show that there has been a governmental determination that its
6    members require and warrant special federal assistance in
7    protecting their civil rights."  Schultz v. Sundberg, 759 F.2d
8    714, 718 (9th Cir. 1985).  In other words, to state a claim
9    pursuant to § 1985(3), it is required "either that the courts have
10   designated the class in question a suspect or quasi-suspect
11   classification requiring more exacting scrutiny or that Congress
12   has indicated through legislation that the class required special
13   protection."  Id.

14       The Ninth Circuit has suggested that this requirement of a
15   suspect or quasi-suspect class also applies to claims pursuant to
16   the second clause of § 1985(2) such as Plaintiff's.  In Portman v.
17   County of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993), the
18   Ninth Circuit held that a plaintiff had no cause of action
19   pursuant to the second clause of § 1985(2) because he failed to
20   allege "that the County denied him access to state courts because
21   he was a member of a protected class."  See also Bagley v. CMC
22   Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991) (holding that
23   the district court properly rejected the plaintiff's § 1985(2)
24   claim because the plaintiff "failed to assert his membership in a
25   protected class or any denial of equal protection"); Kimble v.
26   D.J. McDuffy, Inc., 648 F.2d 340, 347 (5th Cir. 1981) ("If racial
27   or class-based animus is required by Section 1985(3), it is
28   required by Section 1985(2) as well.") (overruled as to the first

12

clause of § 1985(2) by <u>Kush v. Rutledge</u>, 460 U.S. 719, 726 (1983)).

District courts have also required allegations of membership in a protected class in order to state a claim pursuant to the second clause of § 1985(2).  <u>See, e.g.</u>, <u>Armster v. County of Riverside</u>, 2011 U.S. Dist. LEXIS 154767 (C.D. Cal.) ("To state a claim under § 1985(2) or (3), a plaintiff must allege (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory anumus lay behind the conspirator's action . . .") (internal quotation marks omitted); <u>Moore v. City of Ceres</u>, 2011 U.S. Dist. LEXIS 130556, *20 (C.D. Cal.) (finding that the plaintiff failed to state a claim pursuant to § 1985(2) because he had not "alleged that any Defendant denied him access to state courts because he was a member of a protected class").

Plaintiff provides no basis for a finding that victims of domestic violence are a suspect or quasi-suspect class as required for a § 1985(2) claim.  Her citation to two cases in which § 1983 equal protection claims based on allegations that the police failed to provide adequate protection to victims of domestic violence were allowed to proceed is unavailing.  For purposes of § 1983, "membership in a protected class is not a prerequisite to the entitlement to equal protection, it merely factors into the level of scrutiny courts will use in reviewing certain governmental classifications." <u>Bari v. Held</u>, 1992 U.S. Dist. LEXIS 13634, *53 (N.D. Cal.).  Accordingly the fact that cases have been allowed to proceed with such § 1983 equal protection claims does not itself establish that victims of domestic violence are a protected class for purposes of a § 1985(2) claim.

United States District Court
For the Northern District of California

Moreover, neither of the cases cited reached the question of whether victims of domestic violence are members of a suspect or quasi-suspect class.  In Estate of Macias v. Ihde, 219 F.3d 1018 (9th Cir. 2000), a victim of domestic violence was murdered by her husband.  Her survivors filed a § 1983 action alleging that various law enforcement officials denied her "right to equal protection by providing her with inferior police protection on account of her status as a woman, a Latina, and a victim of domestic violence."  Id. at 1019.  The district court granted a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, finding that there was no causal link between the defendants' conduct and the murder.  Id. at 1020.  The Ninth Circuit reversed, holding that "the district court erred as a matter of law in concluding that the alleged constitutional deprivation was the murder."  Id. at 1028.  Neither the district court nor the Ninth Circuit reached the question of whether victims of domestic violence are members of a protected class. Id.

In Balisteri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir. 1988) (overruled in part on other grounds by DeShaney v. Winnebago Dep't of Social Servs., 489 U.S. 189 (1989), the Ninth Circuit held that the district court erred in dismissing the plaintiff's § 1983 equal protection claim based on an alleged intent "to treat domestic cases less seriously than other assaults."  Id. at 701. As noted above, that a plaintiff could pursue this § 1983 claim does not establish that victims of domestic violence are a protected class for purposes of § 1985(2).  Indeed, the Ninth Circuit has only applied rational basis review to classifications

14

based on status as a victim of domestic violence.  <u>See</u> <u>Navarro v.</u>
<u>Block</u>, 72 F.3d 712, 717 (9th Cir. 1996) ("even absent evidence of
gender discrimination, the Navarros' equal protection claim still
survives because they could prove that the domestic violence/non-
domestic violence classification fails even the rationality
test").

Accordingly, Plaintiff's § 1985(2) claim is dismissed. If
Plaintiff can allege, consistent with her original complaint,
additional facts sufficient to establish that Defendants acted out
of animus against her and her children because they are members of
a recognized protected class, she may replead this claim in her
second amended complaint.

B.    Seventh Cause of Action--RICO

Plaintiff alleges two separate schemes under the Racketeer
Influenced and Corrupt Organizations Act (RICO).  "RICO provides a
private cause of action for '[a]ny person injured in his business
or property by reason of a violation of section 1962 of this
chapter.'"  <u>Hemi Group, LLC v. City of New York</u>, 130 S. Ct. 983,
987 (2010) (quoting 18 U.S.C. § 1964(c)).  Section 1962 contains
the substantive criminal RICO provisions.

To state a claim under RICO, Plaintiff must allege a pattern
of racketeering activity.  18 U.S.C. § 1961.  To establish a
pattern of racketeering activity, a plaintiff's allegations must
show that the predicate acts are related ("relatedness
requirement"), "and that they amount to or pose a threat of
continued criminal activity" ("continuity requirement").  <u>H.J.,</u>
<u>Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989)
(emphasis in original).

United States District Court
For the Northern District of California

A plaintiff may satisfy the continuity requirement by alleging either "closed-ended" or "open-ended" continuity. Closed-ended continuity involves "a series of related predicates extending over a substantial period of time." H.J., 492 U.S. at 242; see also Religious Technology Center v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992). Open-ended continuity involves "a specific threat of repetition extending indefinitely into the future," or predicate acts that "are part of an ongoing entity's regular way of doing business." H.J., 492 U.S. at 242; Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450 (9th Cir. 1991).

Where the predicate acts were designed to bring about a single event or injury to a single plaintiff, continuity is not sufficiently plead. See, e.g., Medallion Television Enterprises, Inc. v. SelecTV of California, Inc., 833 F.2d 1360, 1364 (9th Cir. 1987) (two predicate acts aimed at fraudulent inducement to enter a contract); Religious Technology Center, 971 F.2d at 366 (only goal of defendants was successful prosecution of their state lawsuit); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992) (defendants' acts served single purpose of impoverishing plaintiff).

In Sever, a single plaintiff brought suit against his former employers alleging that they had fired him, blacklisted him, and induced a subsequent employer to fire him after he wrote articles criticizing the defendant former employers and testified before Congress to their economic detriment. The plaintiff's RICO claim alleged that the defendants engaged in a pattern of racketeering activity that damaged his ability to obtain employment. The lower court dismissed the plaintiff's fourth amended complaint for

failure to state a RICO claim, in part because he had failed to allege a pattern of racketeering.  Id. at 1533.  The Ninth Circuit affirmed, holding, among other things, that the allegations did not satisfy the continuity requirement set out in H.J., noting that there was no suggestion that the defendants would have harmed any other Congressional witnesses or that the alleged practices had become a regular way of conducting business.  Id.  In addition, the Court noted that "there was but a single victim involved."  Id. at 1535.

As in Sever, Plaintiff's complaint alleges only that Defendants' "collective conduct is in a sense a single episode having the singular purpose of" depriving Plaintiff of custody of her children.  Id.  Accordingly, the Court finds that Plaintiff has failed to allege a pattern of racketeering activity and dismisses Plaintiff's RICO claims.

If Plaintiff can allege, consistent with her original complaint, additional facts sufficient to establish a pattern of racketeering activity, she may replead her RICO claims in her second amended complaint.

C.   Eighth Cause of Action--First Amendment Claim

Plaintiff alleges that Defendants Morgan, Carey and Reed violated R.F.'s and her rights under the First Amendment to the United States Constitution.  Title 42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

**United States District Court**
For the Northern District of California

Plaintiff alleges that in late 2011 Defendant Morgan, a social worker employed by San Mateo County's Child Protective Services Department, "wrote a report designed to minimize and cover up" child abuse suffered by her children.  1AC ¶ 358. Plaintiff further alleges that Defendant Morgan violated an unspecified "law on confidentiality" by providing a copy of the report to J. Fotinos's attorney.  1Ac ¶ 359.  Plaintiff alleges that Defendants Carey and Reed, San Mateo County Deputy Sheriffs, relied on those reports in failing to take seriously Plaintiff's complaints of child abuse, thereby failing to fulfill their duties under California law.  1AC ¶ 364.  Plaintiff then alleges that Defendants Morgan, Carey and Reed are "retaliating against" Plaintiff and her children "in violation of the free speech clause of the First Amendment" because the alleged evidence of her daughter's abuse "is a reflection on the reckless, indifferent, and deliberate disregard the San Mateo judges . . . have shown for the mother and her children."  1AC ¶ 365.

Plaintiff's primary contentions are that Defendants Morgan, Carey and Reed are violating provisions of California law.  "As a general rule, a violation of state law does not lead to liability under § 1983."  Campbell v. Burt, 141 F.3d 927, 930 (1998). Plaintiff further asserts that, as a result of "Morgan making and disseminating the false report" to Plaintiff's and J. Fotinos's counsel, "M. Fotinos and R.F. are denied meaningful access to the courts" because J. Fotinos's counsel provided a copy of the report to the judge presiding over Plaintiff's request for a domestic violence restraining order.  1AC ¶ 364.  However, it is not clear how providing a report by a Child Protective Services social

worker regarding alleged child abuse to a judge considering a
domestic violence restraining order is a violation of Plaintiff's
First Amendment rights.

Plaintiff's First Amendment claim is dismissed.  If Plaintiff
can allege, consistent with her original complaint, additional
facts sufficient to establish a First Amendment claim against
Defendants Morgan, Carey and Reed, she may replead this claim in
her second amended complaint.

> D.   Ninth Cause of Action--Equal Protection and Due Process
>      Claim

Plaintiff next alleges that the same actions by Defendants
Morgan, Carey and Reed that underlie her § 1983 First Amendment
claim constituted a violation of Plaintiff's and her children's
rights to Due Process and their "equal protection rights" to child
protective and police services "as victims of domestic violence."
1AC ¶¶ 369, 372.

Plaintiff alleges that Defendant Morgan violated her and her
children's due process rights by providing the report regarding
alleged child abuse to J. Fotinos's attorney "knowing he would
forward it" to the judge presiding over Plaintiff's request for a
domestic violence restraining order.  Plaintiff asserts that the
report is inadmissible under the California Evidence Code,
Plaintiff's counsel was not given the opportunity to cross examine
Morgan at the hearing, and the judge read the report "even before
the hearing had started."  Even assuming that the report was
improperly considered by the judge, it is not clear how Defendant
Morgan can be held liable for the actions of J. Fotinos's attorney

in submitting the report to the court, or the action of the judge in failing to strike the report.

Plaintiff further alleges that various shortcomings in the manner in which Defendants Carey and Reed responded to R.F.'s report of abuse by her father violated Plaintiff's and her children's Due Process rights.  1AC ¶ 372.  In other words, Plaintiff asserts a Due Process claim based on the officers' failure to act.  However, "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  Deshaney v. Winnebago County Dep't of Social Svcs., 489 U.S. 189, 196 (1989).

Plaintiff's Equal Protection claim also fails because Plaintiff does not allege that any of the Defendants acted because of her and her children's status as victims of domestic violence. Accordingly she has failed to make a showing of discriminatory intent necessary to support an equal protection claim.  Navarro v. Block, 72 F.3d 712, 716 n.5 (9th Cir. 1995) (quoting Personnel Adm'r of Mass. v. Feeny, 442 U.S. 256, 279 (1979)).  Indeed, Plaintiff has alleged that Morgan acted "for damage control on behalf of the San Mateo judicial establishment."  1AC ¶ 371.  This contradicts Plaintiff's allegation that Defendant Morgan acted with discriminatory intent.

Plaintiff's Equal Protection and Due Process claim is dismissed.  If Plaintiff can allege, consistent with her original complaint, additional facts sufficient to establish a claim

**United States District Court**
For the Northern District of California

1  against Defendants Morgan, Carey and Reed, she may replead this

2  claim in her second amended complaint.

3      E.   Tenth Cause of Action--Monell Claim

4      Plaintiff next alleges a § 1983 claim against Defendants City

5  of Belmont and San Mateo County.  Section 1983 claims against

6  cities and counties can only be brought in accordance with Monell

7  v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  "Plaintiffs

8  who seek to impose liability on local governments under § 1983

9  must prove that 'action pursuant to official municipal policy'

10 caused their injury."  Connick v. Thompson, 131 S. Ct. 1350, 1359

11 (2011) (citing Monell, 436 U.S. at 691).  "Official municipal

12 policy includes the decisions of a government's lawmakers, the

13 acts of its policymaking officials, and practices so persistent

14 and widespread as to practically have the force of law."  Id.

15     A city may not be held vicariously liable for the

16 unconstitutional acts of its employees on the basis of an

17 employer-employee relationship with the tortfeasor.  Monell, 436

18 U.S. at 691-92.  The Ninth Circuit has held that Monell liability

19 can be established in one of three ways.  Specifically, the

20 plaintiff must prove (1) "that a city employee committed the

21 alleged constitutional violation pursuant to a formal governmental

22 policy or a longstanding practice or custom which constitutes the

23 standard operating procedure of the local governmental entity;"

24 (2) "that the individual who committed the constitutional tort was

25 an official with final policy-making authority;" or (3) "that an

26 official with final policy-making authority ratified a

27 subordinate's unconstitutional decision or action and the basis

28

United States District Court
For the Northern District of California

for it." <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Plaintiff alleges that the City of Belmont and Santa Clara County "maintain a policy, practice, custom, and habit whereby police officers are improperly trained with respect to domestic violence victims seeking [emergency protective orders] and fail repeatedly to provide all the rights domestic violence victims are entitled to."[5]  1AC ¶ 376.  However, as discussed above, the Court finds that Plaintiff has failed to allege any constitutional injury.  Accordingly, Plaintiff cannot allege a <u>Monell</u> claim. <u>Scott v. Henrich</u>, 39 F.3d 912, 916 (9th Cir. 1992).  Moreover, even assuming Plaintiff is able to allege a constitutional injury, she has failed to allege any facts to support a finding that any of the individual Defendants acted according to any city or county policy or practice.  Indeed, the only factual allegations in the complaint to support Plaintiff's <u>Monell</u> claims concern criticism of how San Mateo County has handled an unrelated criminal prosecution of an individual not involved in this case and criticism of how the San Mateo County District Attorney and a San Mateo Superior Court judge have handled unrelated criminal prosecutions of J. Fotinos.  <u>See</u> 1AC at ¶¶ 377-79.

Plaintiff's oppositions to the City of Belmont's and San Mateo County's motions to dismiss contain general allegations that Defendants Carey, Reed and Pitts failed to follow certain state

United States District Court
For the Northern District of California

_____

[5] In her opposition to the City of Belmont's motion to dismiss, Plaintiff asserts that her <u>Monell</u> claim is based on gender as well as status as domestic violence victims.  However, the allegations in the 1AC fail to support such a claim.

laws or local policies.  However, Plaintiff makes only conclusory statements that these failures were due to a lack of training. This is not sufficient.

Plaintiff has failed to state a <u>Monell</u> claim.  If she can allege, consistent with her original complaint, additional facts sufficient to establish such a claim, she may replead it in her second amended complaint.

F.    Eleventh Cause of Action--Injunctive Relief

Plaintiff alleges that, unless the Court orders Defendant Harris, the Attorney General of the State of California, to prosecute J. Fotinos and certain San Mateo County judges who presided over Plaintiff's child custody dispute, both Plaintiff and residents of San Mateo County will suffer harm.  Similarly, Plaintiff alleges that, unless the Court orders Defendant Kim, the Chief Trial Counsel of the State Bar of California, to investigate attorneys Kinney and Miller, Plaintiffs will continue to suffer irreparable harm.

1.   Defendant Harris

As Defendant Harris points out, Plaintiff has not alleged that Defendant Harris has violated, or is about to violate, any federal law or federal right enjoyed by Plaintiff.  The Eleventh Amendment deprives federal courts of jurisdiction over suits by private citizens against states, state agents and state instrumentalities.  <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429-31 (1997); <u>Welch v. Texas Dept. of Hwys. and Pub. Trans.</u>, 483 U.S. 468, 486 (1987).  Accordingly, Plaintiff's cause of action against Defendant Harris is barred by the Eleventh Amendment.  Moreover, the Supreme Court has long held that "a

United States District Court
For the Northern District of California

citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (citing Younger v. Harris, 401 U.S. 37, 42 (1971); Bailey v. Patterson, 369 U.S. 31, 33 (1962); Poe v. Ullman, 367 U.S. 497, 501 (1961)).

Plaintiff's late-filed opposition does not address any of Defendant Harris's well-taken legal arguments. Instead, Plaintiff cites the Attorney General's general supervisory powers over sheriff's departments. See, e.g., Cal. Const. Art. V, § 13 ("The Attorney General shall have direct supervision over every district attorney and sheriff . . . in all matters pertaining to the duties of their respective offices . . . ."); Cal Gov. Code § 12560 ("The Attorney General has direct supervision over the sheriffs of the several counties of the State. . . ."). However, nothing in these provisions provides grounds for Plaintiff's claim.

Plaintiff's claim against Defendant Harris is dismissed with prejudice.

### 2. Defendant Kim

Plaintiff also seeks an injunction requiring Defendant Kim, Chief Trial Counsel of the State Bar of California, to open professional misconduct investigations of opposing counsel and another attorney involved in her dispute with her ex-husband. The Eleventh Amendment also bars Plaintiff's claims against Defendant Kim. Plaintiff has not alleged any violations of federal law by Defendant Kim. Accordingly, Plaintiff's reference to Ex Parte Young, 209 U.S. 123 (1908), in the complaint is unavailing.

United States District Court
For the Northern District of California

Moreover, instead of filing an opposition to Defendant Kim's motion to dismiss, Plaintiff has filed an "Ex Parte Motion for Leave to Amend/Supplement First Amended Complaint."  In that filing, Plaintiff's only response to Defendant Kim's motion is to suggest that Defendant Kim "may have second thoughts" about deciding to discipline the relevant attorneys when she learns certain facts that Plaintiff seeks leave to allege.  Docket No. 46 at ¶ 18.

Plaintiff's claim against Defendant Kim is dismissed with prejudice.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Defendant La Farge's motion to dismiss (Docket No. 18), GRANTS Defendant Harris's motion to dismiss (Docket No. 22), GRANTS Defendant Kim's Motion to dismiss (Docket No. 26), GRANTS in part Defendant J. Fotinos's motion to dismiss (Docket No. 33), GRANTS in part Defendant Grover's motion to dismiss (Docket No. 34), GRANTS in part Defendant Miller's motion to dismiss and DENIES her motion to strike (Docket No. 58),[6] GRANTS Defendant City of Belmont's motion to dismiss (Docket No. 61), GRANTS San Mateo County Defendants' motion to dismiss (Docket No. 62), and DENIES Plaintiff's motion for leave to amend or supplement (Docket No. 46).

The claims against Defendants Harris and Kim are dismissed with prejudice.  The claims against the remaining Defendants are

---

[6] Because the court does not rely on any of the evidence submitted in support of Plaintiff's opposition to Defendant Miller's Motion to Dismiss, it denies Defendant Miller's evidentiary objections as moot.

United States District Court
For the Northern District of California

dismissed without prejudice.  Plaintiff may file an amended complaint within fourteen days, remedying the defects addressed above if she is able truthfully to do so without contradicting the allegations in her original complaint.  Plaintiff may not add any additional causes of action without leave of the Court.  In the event that Plaintiff files an amended complaint, Defendants may answer or move to dismiss the amended complaint within twenty-one days thereafter.  If Plaintiff does not file an amended complaint, her federal claims will be dismissed with prejudice and her state claims will be dismissed without prejudice to refiling in state court.

     IT IS SO ORDERED.

Dated:  3/22/2013

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California